1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

10                     **WESTERN DIVISION**

11              No. __5__:__17__-CV-__00267___

12

13   KELSEY BATTLE, an individual,              Trademark Infringement (15 U.S.C.
                                                § 1114(1));
14              Plaintiff,
                                                Trademark Infringement, False Designation of
15        vs.                                   Origin, Passing Off, and Unfair Competition
                                                (15 U.S.C. § 1125(a)); and
16   UNDER ARMOUR, INC., a Maryland
     corporation,                               Unfair Competition (N.C. Gen. Stat.
17                                              § 75-1.1(a))
                Defendant.
18                                              **DEMAND FOR JURY TRIAL**

19

20                          **COMPLAINT**

21        Plaintiff Kelsey Battle ("Plaintiff" or "Mr. Battle"), for his Complaint against Under

22   Armour, Inc. ("Defendant" or "Under Armour"), alleges as follows upon actual knowledge with

23   respect to his own actions, and upon information and belief as to all other matters:

24                     **NATURE OF THE ACTION**

25        1.      This is a civil action for trademark infringement and unfair competition under the

26   Lanham Act, 15 U.S.C. § 1051, *et seq.*, and/or under North Carolina General Statute § 75-1.1.

27        2.      Mr. Battle is the owner of the ICAN trademark ("ICAN" or "the Mark").  He has

28   used ICAN as a trademark on clothing sold by his business for over two decades.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1039283
Case 5:17-cv-00627-BO   Document 1   Filed 12/20/17   Page 1 of 9

3.      Under Armour is a multi-billion dollar company, specializing in performance apparel, footwear, accessories, sporting goods, and related services, including sponsored sports apparel.  Since 2013, Under Armour has sponsored Wardell Stephen "Steph" Curry II.  In building a product line for Steph Curry, Under Armour has used the ICAN Mark—including derivatives such as "I Can.  I Will." and "I Can do all things"—to promote those products.

4.      Under Armour has built this lucrative brand at the expense of Mr. Battle.  Under Armour has willfully damaged Mr. Battle's mark, swamping the market, causing confusion, and denying him any opportunity to grow his own family business.  Under Armour has blatantly disregarded Mr. Battle's trademark rights and, taking advantage of its greater size and resources, has attempted to simply appropriate ICAN for itself.  It has done so without any regard to Mr. Battle or compensation to Mr. Battle for using his Mark.  By this action, Mr. Battle seeks equitable and monetary relief from Under Armour's willful misconduct.

**PARTIES**

5.      Plaintiff Kelsey Battle is an individual residing in North Carolina and does business out of Fayetteville, North Carolina.

6.      On information and belief, Defendant Under Armour is a Maryland corporation headquartered at 1020 Hull Street, Baltimore, Maryland 21230.

**JURISDICTION AND VENUE**

7.      The Court has jurisdiction over Mr. Battle's Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a).

8.      The Court has jurisdiction over Mr. Battle's state law claim for unfair competition pursuant to 28 U.S.C. § 1338(b), as it is joined with a substantial and related claim under the Lanham Act, and 28 U.S.C. § 1367(a), as the matter is substantially related to his federal claim so as to form the same case or controversy.

9.      This Court also has jurisdiction over all claims under 28 U.S.C. § 1332 because Mr. Battle is a citizen of North Carolina and Under Armour is a citizen of Maryland, and because the amount in controversy exceeds $75,000 exclusive of interests and costs.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
10392831

Case 5:17-cv-00627-BO   Document 1   Filed 12/20/17   Page 2 of 9

10.     On information and belief, this Court has general personal jurisdiction over Under Armour based on its continuous and systematic contacts with North Carolina, including the sale of its products in North Carolina and the shipment of its products into North Carolina.

11.     On information and belief, this Court also has specific personal jurisdiction over Under Armour because it purposefully availed itself of the privilege of conducting business in North Carolina by, inter alia, disseminating advertising featuring ICAN to consumers located in North Carolina and conducting sales of infringing apparel in North Carolina. Mr. Battle's claims arise, in part, out of Under Armour's activities in North Carolina.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because, on information and belief, Under Armour has continuous and systematic contacts with North Carolina, including the sale of its products through stores in North Carolina and shipment of its products into North Carolina. Further, a substantial part of the events giving rise to Mr. Battle's claims have occurred and continue to occur in this District and the Mark is located in this District, where Mr. Battle maintains his principal place of business.

**PLAINTIFF'S BUSINESS AND THE MARK**

13.     Mr. Battle launched the ICAN clothing brand to promote positivity through fashion. A United States disabled veteran, Battle served in the 82nd Airborne Division of the Army from 1990 to 2001, working as a tank driver and in logistics. Mr. Battle was inspired by his military service and life experiences to create a faith-based and empowerment-oriented brand for apparel. To Mr. Battle, the ICAN mark was a mantra for living. The ICAN mark represents aspiration and ambition: "The Brand of a Positive Life." To build his clothing brand from nothing, Mr. Battle worked seven days a week at multiple jobs, including at a shoe store where a fellow veteran tutored him in the fashion trade.

14.     In 2003, Mr. Battle applied to register the ICAN mark. The registration issued on April 18, 2006 in International Class 25 (US Reg. No. 3,081,141). In 2015, Mr. Battle timely renewed the registration. Mr. Battle is the current owner of this valid, incontestable federal trademark registration for ICAN in connection with men's and women's clothing.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
10392831

Case 5:17-cv-00627-BO   Document 13   Filed 12/20/17   Page 3 of 9

15. For nearly two decades, Mr. Battle and his companies have been designing, marketing and selling clothing and apparel bearing the ICAN mark, and under the brand ICAN.

16. The ICAN mark has been featured in connection with a wide variety of products. Representative examples include:



17. Mr. Battle has spent a considerable amount of money, time, effort, and other resources in promoting ICAN and has built up a considerable amount of goodwill. ICAN has served to identify Mr. Battle and his businesses in the industry for years.

18. Mr. Battle travels across the country to market the ICAN brand. He consistently attends the COBB Trade Show in Atlanta and the MAGIC Apparel Trade Show in Las Vegas to promote his brand and sell his ICAN products.

19. In addition to attending trade shows promoting his ICAN trademarked products, Mr. Battle has advertised his products in malls, online, and on cable television. He further promotes and markets his products through popular social networking sites, including FACEBOOK, INSTAGRAM, and TWITTER. Professional athletes, comedians, and actors have all served as brand ambassadors for ICAN.

**UNDER ARMOUR'S WRONGFUL ACTS**

20. Beginning in 2015, Under Armour launched a line of apparel throughout the country prominently featuring the ICAN mark. Despite knowledge of the ICAN mark, Under Armour used its considerable marketing resources to flood the market with infringing products. Under Armour did so to build a new ICAN brand of products for itself.

21. Under Armour did not request permission to use the ICAN mark. And Mr. Battle never authorized Under Armour's use of his ICAN mark.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

22. Mr. Battle first discovered the infringement while visiting a Belk's department store, where he saw shirts displaying his ICAN mark hanging on the stands. His family and friends called to congratulate him on ICAN's partnership with Steph Curry and Under Armour. But this was not the result of any agreement or partnership; instead, it was Under Armour's attempt to simply take ICAN for itself and the Steph Curry product line.

23. The Belk incident was simply the beginning. Embarrassingly, Mr. Battle could not escape the ironic congratulations. At trade shows, buyers, vendors, and business contacts associated him with Under Armour's use. At a local sports outlet, a manager mistook Mr. Battle's ICAN hat for Under Armour's infringing hat. Even employees at Under Armour's own North Carolina outlets confused Mr. Battle's ICAN t-shirt and hat with their infringing products.

24. Under Armour has used ICAN extensively in its Steph Curry product line—on shirts, shorts, hats, shoes, etc. Representative examples include:



25. Under Armour sells the infringing products through its stores and on its website.

26. Under Armour advertises the infringing products on its underarmour.com homepage, in banner advertisements online, on its FACEBOOK page, through its YouTube video page, in commercials placed with television networks, at sponsorship events, at trade shows, in stadiums, on billboards, and through many other advertising means.



IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10392831

27.    Under Armour has leveraged its global resources and multinational network and Steph Curry's star power to market infringing items.  This rampant and illegal use of ICAN was designed to and has overwhelmed Mr. Battle's mark.  Through widespread marketing and national media exposure, Under Armour has attempted to steal the ICAN mark for itself.

28.    Under Armour's actions have and will continue to cause confusion, mistake, and deception as to the source or origin of the ICAN mark and/or products associated with the ICAN mark, and is likely to falsely suggest a sponsorship, connection, or association of Under Armour, its products, services, and commercial activities, with Mr. Battle.

29.    Under Armour's use of the Mark has damaged and irreparably injured and, if allowed to continue, will further damage and irreparably injure Mr. Battle and his ICAN mark.  Its actions have, for example, caused damage to (1) the value of the ICAN mark; (2) Mr. Battle's ability to assert control over the goodwill and reputation of the ICAN mark; (3) Mr. Battle's ability to grow his ICAN brand; and (4) Mr. Battle's ability to take advantage of business opportunities.

30.    Under Armour's use of the Mark has also irreparably injured and, if allowed to continue, will further irreparably injure the public, which has an interest in being free from confusion.

**FIRST CLAIM FOR RELIEF**

**Trademark Infringement**

**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

31.    Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.    The registered ICAN mark (U.S. Reg. No. 3,081,141) is a valid, protectable trademark.

33.    Under Armour used, and continues to use, in commerce reproductions, copies, and colorable imitations of the ICAN mark in connection with the sale, offering for sale, distribution, and advertising of goods, which is likely to cause confusion, or to cause mistake, or to deceive, in

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations
1039283

Case 5:17-cv-00627-BO   Document 1   Filed 12/20/17   Page 6 of 9

knowing, deliberate and willful violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF

### Trademark Infringement, False Designation of Origin,

### Passing Off, and Unfair Competition

### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

34. Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Under Armour's actions are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Under Armour, its products, its services, and/or its commercial activities by or with Mr. Battle, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## THIRD CLAIM FOR RELIEF

### Unfair Competition

### North Carolina Gen. Stat. § 75-1.1(a)

36. Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 35 in this Complaint as if fully set forth herein.

37. Under Armour's actions are likely to confuse the general public as to the genesis of the goods in question, constituting a deceptive business practice and giving Under Armour an unfair business advantage in violation of N.C. Gen. Stat. § 75-1.1(a).

38. Under Armour's use of the ICAN mark was and continues to be a business practice in or affecting commerce within the meaning of North Carolina Gen. Stat. § 75-1.1(b).

39. Under Armour's unfair business practices proximately caused the harms suffered by Mr. Battle and his related businesses.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
1039283

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor on each and every claim set forth above and award it relief, including but not limited to the following:

A.  An Order declaring that the Defendant's use of ICAN infringes the ICAN mark, and constitutes unfair competition under federal and/or state law.

B.  A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with them:

    a.  From using ICAN, or any other marks, logos, designs, designations or indicators that are confusingly similar to the ICAN trademark in manners likely to cause confusion with the ICAN mark, including but not limited to in connection with any other wording or designs.

    b.  From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

C.  An Order directing Defendant to destroy all products, packaging, signage, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or bear the ICAN mark or slogan or any other marks, logos, designs, designations, slogans, or indicators that are confusingly similar to the ICAN trademark in accordance with 15 U.S.C. § 1118.

D.  An Order requiring Defendant to disseminate pre-approved corrective advertising and send pre-approved letters to all customers, agents, and representatives to address the likely confusion caused by its use of the ICAN trademark.

E.  An Order requiring Defendant to account for and pay to Plaintiff any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws, including but not limited to North Carolina Gen. Stat. § 75-16.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10392831

Case 5:17-cv-00627-BO   Document 1   Filed 12/20/17   Page 8 of 9

F.    An Order requiring the Defendant to pay damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws including but not limited to North Carolina Gen. Stat. § 75-16.

G.    An Order requiring Defendant to pay Plaintiff all of his litigation expenses, including reasonable attorneys' fees and costs of this action, pursuant to 15 U.S.C. § 1117 and other applicable laws including but not limited to North Carolina Gen. Stat. § 75-16.1.

H.    Other relief as the Court may deem appropriate.

This 20th day of December, 2017

ELLIS & WINTERS LLP

/s/Leslie C. Packer
Leslie C. Packer
NC State Bar No. 13640
Ellis & Winters LLP
4131 Parklake Ave, Suite 400
Raleigh, NC 27612
Telephone: (919) 865-7009
Facsimile: (919) 865.7010
leslie.packer@elliswinters.com

IRELL & MANELLA LLP

Morgan Chu
Of Counsel, *pro hac vice* application pending
Victor Jih
Of Counsel, *pro hac vice* application pending
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
MChu@irell.com
VJih@irell.com

**Attorneys for Plaintiff Kelsey Battle**

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1039283

Case 5:17-cv-00627-BO   Document 19   Filed 12/20/17   Page 9 of 9